## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: BROOKS AUTOMATION, INC., SECURITIES LITIGATION | ) ) ) ) ) ) | Master File No. 06-CA-11068 RWZ |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF CLASS, APPROVAL OF NOTICE PLAN, AND SETTING OF SETTLEMENT FAIRNESS HEARING

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Steven E. Fineman
Daniel P. Chiplock
780 Third Avenue, 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Richard M. Heimann
Michael W. Sobol (BBO # 555519)
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Counsel for Lead Plaintiff Los Angeles County
Employees Retirement Association and named
plaintiff Sacramento County Employees'
Retirement System*

Dated: June 24, 2008

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     INTRODUCTION ................................................................................................... 1

III.    FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

      A.    Description of the Action .............................................................................. 2

      B.    Discovery ...................................................................................................... 5

      C.    Mediation ...................................................................................................... 6

      D.    Reasons for the Settlement ........................................................................... 7

IV.     ARGUMENT ........................................................................................................... 8

      A.    Plaintiffs' Motion for an Order Preliminarily Approving the Settlement
            Should Be Granted. ....................................................................................... 8

      B.    The Proposed Class Meets the Prerequisites for Class Certification under
            Rule 23(a)................................................................................................... 10

            1.    Numerosity..................................................................................... 11

            2.    Commonality.................................................................................. 12

            3.    Typicality ....................................................................................... 14

            4.    Adequacy ....................................................................................... 15

      C.    The Proposed Class Satisfies the Requirements of Rule 23(b) – Common
            Questions of Law Predominate and A Class Action is Superior to Multiple
            Individual Actions........................................................................................ 16

      D.    The Proposed Form and Method of Class Notice are Appropriate and
            Satisfy the Requirements of Rule 23. ......................................................... 17

V.      PROPOSED SCHEDULE ..................................................................................... 19

VI.     CONCLUSION...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abelson v. Strong*,
1987 WL 15872 (D. Mass. July 30, 1987) ............................................................ 14

*Adver. Specialty Nat'l. Ass'n. v. FTC*,
238 F.2d 108 (1st Cir. 1956) .............................................................................. 12

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 10, 16

*Bussie v. Allmerica Financial Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................................... 9

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
177 F.R.D. 54 (D. Mass. 1997) ........................................................................... 11

*Durett v. Hous. Auth. Of City of Providence*,
896 F. 2d 600 (1st Cir. 1990) ............................................................................... 8

*Grace v. Perception Technology Corp.*,
128 F.R.D. 165 (D. Mass. 1989) .............................................................. 10, 12, 13

*Guckenberger v. Boston Univ.*,
957 F. Supp. 306 (D. Mass. 1997) ...................................................................... 14

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) .............................................................................. 12

*Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................... 18

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ............................................................................. 19

*In re Bank of Boston Corp. Sec. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) ............................................................... 14, 15

*In re Brooks Automation, Inc. Sec. Litig.*,
2007 WL 4754051 (D. Mass. Nov. 6, 2007) .......................................................... 5

# TABLE OF AUTHORITIES
### (continued)

Page

*In re Cabletron Sys., Inc. Sec. Litig.*,
   239 F.R.D. 30 (D. N.H. 2006) .................................................................... 19

*In re First Commodity Corp. of Boston Customer Accounts Litigation*,
   119 F.R.D. 301 (D. Mass. 1987) ................................................................. 11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Products Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) .................................................................. 9

*In re Lupron Marketing and Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ............................................................. 9, 13

*In re Lupron Marketing and Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) .......................................................... 9

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
   183 F.R.D. 33 (D. Mass. 1998) .................................................................. 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... 19

*Kirby v. Cullinet Software, Inc.*,
   116 F.R.D. 303 (D. Mass. 1987) .......................................................... passim

*Leech v. Brooks Automation, Inc.*,
   2006 WL 3690736 (D. Mass. Dec. 13, 2006) ............................................... 3

*McCuin v. Sec'y of Health & Human Serv.*,
   817 F.2d 161 (1st Cir. 1987) ...................................................................... 12

*Modell v. Eliot Sav. Bank*,
   139 F.R.D. 17 (D. Mass. 1991) .................................................................. 15

*Mullane v. Central Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................... 19

*New England Health Care Employees Pension Fund v. Fruit of the Loom Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ............................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) ................................................................ 10

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988) .............................................. 10, 12, 13, 14

*Rand v. M/A-Com, Inc.*,
   1993 WL 410874 (D. Mass. July 19, 1993) ......................................... 8, 9

*Randle v. SpecTran*,
   129 F.R.D. 386 (D. Mass. 1988) ....................................................... 12, 13

*Smilow v. Southwestern Bell Mobile Sys.*,
   323 F.3d 32 (1st Cir. 2003) ................................................................ 16

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005) ....................................................... 11

**STATUTES**

15 United States Code Annotated
   § 78u-4(a)(7)(A)-(F) .......................................................................... 18

Securities Act of 1933
   Section 11 ................................................................... 2, 4, 5, 15
   Section 12 ............................................................................. 2, 15
   Section 12(a) ................................................................................ 4
   Section 15 ......................................................................... 2, 4, 15

Securities Exchange Act of 1934
   Section 10(b) ....................................................................... passim
   Section 20(a) ................................................................... 2, 3, 14

**RULES**

Federal Rule of Civil Procedure
   Rule 12(b) .......................................................................... 5
   Rule 23 ........................................................................ passim
   Rule 23(a) .................................................................... passim
   Rule 23(a)(1) ............................................................... 11, 12
   Rule 23(a)(2) ........................................................... 12, 13, 14
   Rule 23(a)(3) ................................................................... 14
   Rule 23(a)(4) ................................................................... 15

## TABLE OF AUTHORITIES
### (continued)

**Page**

Rule 23(b) ................................................................................................................ 16, 17

Rule 23(b)(3) .................................................................................................................. 16

Rule 23(c)(2)(B) ....................................................................................................... 17, 18

Rule 23(c)(3)(B) .............................................................................................................. 17

Rule 23(e) ......................................................................................................................... 8

Rule 23(e)(1) ............................................................................................................. 17, 18

Rule 30(b)(6) ..................................................................................................................... 6

United States District Court of Masschusetts
  Local Rule 7.1 ................................................................................................................. 1

760970.1

## I.    **PRELIMINARY STATEMENT**

Pursuant to Rule 7.1 of the Local Rules for the United States District Court of Massachusetts, Lead Plaintiff Los Angeles County Employees Retirement Association ("LACERA") and named plaintiff Sacramento County Employees' Retirement System ("SCERS") (together, "Plaintiffs") respectfully submit this Memorandum in support of their Motion for an order: (i) granting preliminary approval to the proposed settlement as detailed in the Stipulation and Agreement of Settlement dated June 18, 2008 (the "Settlement"); (ii) conditionally certifying the Class for purposes of Settlement; (iii) approving the manner of giving notice of the Settlement to the proposed Class; and (iv) setting a date for the final Settlement Fairness Hearing.

## II.    **INTRODUCTION**

The proposed Settlement now before the Court for preliminary approval provides a cash payment of seven million seven hundred fifty thousand dollars ($7,750,000), plus interest earned thereon, for the benefit of the Class (as defined below), and resolves all claims asserted by Plaintiffs against the Defendants (defined below) (collectively, Plaintiffs and Defendants are the "Parties") in this Action.  Plaintiffs and Lead Counsel Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser" or "Lead Counsel") believe that the Settlement before this Court is in the best interests of the Class in view of the estimated damages suffered by the Class, as well as both the complexity of and risks attendant to Plaintiffs' demonstration that those damages were causally linked to Defendants' alleged wrongdoing.  Plaintiffs and Lead Counsel accordingly respectfully submit that the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the First Circuit.

Moreover, certification of the proposed Class is appropriate pursuant to Fed. R. Civ. P. 23, and the proposed notice program more than satisfies the requirements of due process.  Indeed, the individual and publication forms of notice are consistent with the forms of notice used and routinely recognized as satisfying due process in securities actions.  As set forth below, all prerequisites for

760970.1

preliminary approval of the Settlement and conditional certification of the proposed Class have been

met, and Plaintiffs respectfully submit that their Motion should be granted.

### III.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Description of the Action

This action is one of a number of lawsuits that have been filed against publicly-owned

companies over the past two years relating to the alleged improper and undisclosed "backdating" of

company stock options in order to take advantage of troughs in a company's stock price.  Brooks

Automation, Inc. ("Brooks" or the "Company") was one of the first companies to be publicly

identified by *The Wall Street Journal*, in an article published in March 2006, as having allegedly

engaged in this practice.  In the months following that article, Brooks undertook an internal

investigation which resulted in the Company stating that its reported earnings for the prior six years

could no longer be relied upon, the Company's former Compensation Committee members resigned,

and the United States Department of Justice ("DOJ") and the Securities and Exchange Commission

("SEC") both launched their own investigations of the Company's stock option granting practices.

Over the course eight trading days in May 2006, during which time the Company disclosed the

above facts in addition to others concerning its stock option grants, Brooks' stock price fell by

approximately 20%, to the harm of Brooks' shareholders.

The first proposed class action on behalf of Brooks' shareholders, captioned *Charles E.G.*

*Leech, Sr. v. Brooks Automation, Inc., et al.*, Case No. 06-CA-11068-RWZ (D. Mass.), was filed on

June 19, 2006, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of

1934 ("Exchange Act") and Sections 11, 12 and 15 of the Securities Act of 1933 ("Securities Act").

The Exchange Act claims were asserted on behalf of investors who purchased or otherwise acquired

Brooks' publicly-traded securities between July 25, 2001 and May 22, 2006, inclusive.  The

Securities Act claims were asserted on behalf of a subset of the proposed Class (the "Merger

Plaintiffs") consisting of investors who acquired Brooks shares that were traceable to the merger of

-2-

Brooks with Helix Technologies, Corp. ("Helix") on or about October 26, 2005 (the "Merger"). The Securities Act claims specifically alleged that the Joint Proxy/Prospectus and Registration Statement issued in connection with the Merger contained materially false statements concerning Brooks' financial results due to backdated stock options. A second proposed shareholder class action, captioned *James R. Shaw v. Brooks Automation, Inc., et al.*, Case No. 06-CA-11239-RWZ (D. Mass.), and asserting solely Exchange Act claims, was filed on July 19, 2006.

By order of the Honorable Rya W. Zobel dated December 13, 2006, the Court consolidated the *Leech* and *Shaw* actions, appointed LACERA as the Lead Plaintiff for the proposed Class, and approved LACERA's choice of Lieff Cabraser as Lead Counsel. *See Leech v. Brooks Automation, Inc.*, No. 06-11068-RWZ, 2006 WL 3690736 (D. Mass. Dec. 13, 2006).

On February 9, 2007, Lead Plaintiff filed its Consolidated Amended Class Action Complaint (the "CAC"), which asserted claims under Section 10(b) of the Exchange Act against Brooks; Robert J. Therrien ("Therrien"), the Company's former Chief Executive Officer; Amin J. Khoury ("Khoury") and Roger D. Emerick ("Emerick"), who were both members of the Company's Compensation Committee and Board; Joseph R. Martin ("Martin"), the Company's Chairman; and Ellen B. Richstone ("Richstone"), the Company's former Chief Financial Officer. LACERA additionally asserted claims under Section 20(a) of the Exchange Act against these same Defendants[1] (minus Brooks), for, *inter alia*, their direct participation in and/or control of persons participating in the scheme to defraud Brooks' investors into believing (a) that the Company's financial reporting during the propsed class period was accurate, and (b) that the Company's stock option granting practices, and the reporting and recording of the grants in question, were in compliance both with the Company's shareholder-approved stock option plans and with generally accepted accounting principles ("GAAP").

---

[1]        Defendants Brooks, Therrien, Khoury, Emerick, Martin and Richstone are also referred to collectively as the "Backdating Defendants."

The CAC additionally asserted claims under Section 11 of the Securities Act against the Backdating Defendants (minus Richstone), PricewaterhouseCoopers, LLP ("PwC"), Robert Woodbury ("Woodbury") (the Company's new Chief Financial Officer) and Edward Grady ("Grady") (the Company's new Chief Executive Officer), and against all of these same defendants (minus PwC) under Section 15 of the Securities Act, for causing, participating in, and/or controlling the dissemination of materially misleading statements in the Merger Registration Statement and Joint Proxy/ Prospectus concerning the Merger. Lastly, the CAC included a claim under Section 12(a) of the Securities Act against Brooks for making false statements and omissions in the Joint Proxy/Prospectus related to the Merger.

Between April 9 and 18, 2007, Defendants filed motions to dismiss the CAC. On May 10, 2007, LACERA moved for leave to amend the CAC for the discrete purpose of adding SCERS, which acquired Brooks shares traceable to the Merger, as an additional named plaintiff for purposes of litigating the Securities Act claims.[2] On May 21, 2007, Defendants Brooks, Martin, Woodbury and Grady (the "Brooks Defendants") opposed Lead Plaintiff's Motion to Amend. PwC followed with its own opposition to the Motion to Amend on May 24, 2007. Lead Plaintiff filed its memoranda in opposition to Defendants' motions to dismiss on May 24, 2007, followed by a reply memorandum in support of its Motion to Amend on June 21, 2007. Defendants filed reply memoranda in support of their motions to dismiss between June 22 and 25, 2007. Oral argument on both Lead Plaintiff's Motion to Amend and Defendants' motions to dismiss was heard before the Hon. Rya W. Zobel on June 26, 2007, whereupon the Court took all matters under advisement.

One month later, on July 25, 2007, the DOJ lodged a criminal indictment against Therrien stemming from its investigation of the stock options granting practices at Brooks.[3] That same day,

---

[2]    *See* Lead Plaintiff LACERA's Motion to Amend Complaint to Add a Named Plaintiff (and Mem. of Law in Support), filed May 10, 2007 [Docket Nos. 99, 100] ("Motion to Amend").

[3]    The criminal action is captioned *United States of America v. Robert J. Therrien*, Case No. 07-CR-10238-GAO

*Footnote continued on next page*

the SEC filed a civil complaint against Therrien.[4]  On July 30, 2007, Lead Plaintiff filed a motion for

leave to file a supplemental affidavit in opposition to Defendants' motions to dismiss, attaching

copies of both the criminal indictment and the SEC's civil complaint.  Defendants Emerick and

Khoury filed a response to this motion on August 13, 2007.

On November 6, 2007, the Court issued its decision, in which it allowed LACERA's Motion

to Amend, and permitted the bulk of Plaintiffs' claims to proceed.  *In re Brooks Automation, Inc.*

*Sec. Litig.*, No. 06-11068-RWZ, 2007 WL 4754051 (D. Mass. Nov. 6, 2007).  The Court dismissed

certain of Plaintiffs' claims under Section 10(b) of the Exchange Act against Martin and Richstone,

and under Section 11 of the Securities Act against Martin, Woodbury, Grady and PwC, for failure to

state a claim under Fed. R. Civ. P. 12(b).  *Id.*

On November 30, 2007, Plaintiffs filed their Second Amended Consolidated Class Action

Complaint ("SAC"), which added SCERS as an additional named plaintiff.  The remaining

Defendants filed answers to the SAC that same day.

On January 22, 2008, Plaintiffs moved to certify a class of all persons who purchased or

otherwise acquired the publicly traded securities of Brooks during the period from July 25, 2001

through May 22, 2006, inclusive, and were damaged thereby (the "Class").  On February 13, 2008,

the parties jointly moved for the entry of a Stipulated Protective Order governing the exchange of

written discovery.  The Court endorsed and entered the Stipulated Protective Order on February 19,

2008.

**B.    <u>Discovery</u>**

Plaintiffs and the Brooks Defendants each served numerous document requests and

interrogatories in early January 2008.  On February 4, 2008, Plaintiffs served their written responses

---

*Footnote continued from previous page*
(D. Mass.).

[4]    The SEC action is captioned *Securities and Exchange Commission v. Robert J. Therrien*, Case No. 07-CA-11364-RCL (D. Mass.)

and objections to the Brooks Defendants' document requests and interrogatories.  Plaintiffs

subsequently produced, on February 29 and March 10, 2008, over 4,000 pages of documents to the

Brooks Defendants relating to their investments in Brooks and internal investment guidelines,

among other subjects.

Defendants served their written responses and objections to Plaintiffs' document requests

between February 6 and 8, 2008.  After several meet and confers, the parties agreed to an April 25,

2008 deadline for all Defendants to respond to Plaintiffs' interrogatories.  Between March and April

2008, Defendants produced more than 70,000 pages of documents in hard copy or electronic form to

Plaintiffs, including but not limited to documents that were produced to the SEC as part of its

investigation.

During this same time period, Defendants noticed depositions of LACERA and SCERS

under Fed. R. Civ P. 30(b)(6), and also issued subpoenas to several non-parties, including Plaintiffs'

outside investment managers, as well as Leech and Shaw.  Plaintiffs meanwhile served a subpoena

on Brooks' former General Counsel, the law firm of Brown Rudnick Freed & Gesmer, LLP (now

known as Brown Rudnick Berlack Israels LLP) ("Brown Rudnick"), relating to work done advising

the Company on its stock option practices.  The parties also engaged in meet-and-confers and

exchanged lengthy written correspondence, citing extensive legal authority, in connection with all of

the discovery described above.  At the time of mediation (described below), both sides were

preparing for (a) motions to compel responses to certain discovery requests that were served on both

the Parties and on non-parties and (b) party and non-party depositions.

C.    **Mediation**

In the midst of the discovery process described above, the Plaintiffs and Brooks began

discussing a possible resolution of the Action.  On March 25 and 26, 2008, the Parties participated in

a two-day mediation session with the assistance of the Honorable Nicolas H. Politan (Ret.), United

States District Court Judge for the District of New Jersey, which was preceded by the exchange of

detailed mediation statements in which the Parties stated their views of both the strengths and weaknesses of their positions, as well as the provable damages suffered by the proposed Class. The Parties also made confidential presentations to the mediator, particularly as related to damages. At the conclusion of two days of intensive arms-length negotiations, the Parties remained in disagreement over an acceptable settlement figure. Judge Politan then made a mediator's proposal for the Action to settle for $7.75 million to the proposed Class. The Parties departed the mediation without accepting this proposal in order to continue evaluating the strengths and weaknesses of their respective positions in view of the discovery exchanged to date.

On or about April 4, 2008, the Parties agreed in principle to accept the mediator's proposal to settle the Action for $7.75 million, and notified the Court that they had reached a tentative resolution of the Action. Between that date and April 29, 2008, the Parties negotiated and signed a Memorandum of Understanding ("MOU"), followed by a Stipulation of Settlement dated June 18, 2008 memorializing the Settlement.

### D.    Reasons for the Settlement

Plaintiffs have entered into this proposed Settlement with a thorough understanding of the strengths and weaknesses of Plaintiffs' claims, in particular the challenges inherent in proving the "loss causation" element of their Section 10(b) claims. This understanding is based on: (i) review of Brooks' public filings, annual reports, and other public statements; (ii) consultations with a damages expert; (iii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iv) a review of tens of thousands of Company documents concerning Brooks' stock option granting practices; (v) the exchange of information with Defendants both prior to and over the course of a two-day intensive mediation overseen by a retired federal judge; and (vi) input from the mediator, the Hon. Nicholas H. Politan (Ret.).

In determining to settle this Action, Plaintiffs have engaged in extensive and intense arm's-length negotiations with counsel for Defendants. Lead Counsel has evaluated the proposed

-7-

Settlement of $7.75 million in comparison to the likely result of litigation, in light of the risks,

complexity, expense and duration of the litigation.  Lead Counsel has concluded, based on the

analysis of the considerations listed above, that while it is confident in the merits of the Action, (i)

the Settlement described herein confers a substantial benefit upon the Class; (ii) success is not

assured, particularly given the risks and complexity associated with Plaintiffs' proof of loss

causation; (iii) Defendants have mounted and will continue to mount a vigorous defense on the

merits[5]; and (iv) the chance that a greater amount could be recovered for Plaintiffs and the Class

does not outweigh the expense and delay that would be involved in prosecuting the Action to trial.

Based upon the consideration of all of these factors, it is the view of both Lead Counsel and

Plaintiffs, who are sophisticated institutional clients, that the Settlement is fair, adequate, and

reasonable, and that it is in the best interest of Plaintiffs and the proposed Class to settle this Action

on the terms described herein.

## IV.    ARGUMENT

### A.    Plaintiffs' Motion for an Order Preliminarily Approving the Settlement Should Be Granted.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any settlement, voluntary

dismissal or compromise of claims brought on a class basis.  The decision of whether to grant or

deny approval of a settlement lies within the broad discretion of the trial court, and this discretion

should be exercised in light of the general judicial policy favoring settlements. *See Rand v. M/A-*

*Com, Inc.*, Civ. A. No. 86-1347-N, 1993 WL 410874, at *3 (D. Mass. July 19, 1993).  Further, the

settlement of complex class action litigation is clearly favored by the courts. *See Durett v. Hous.*

*Auth. Of City of Providence*, 896 F. 2d 600, 604 (1st Cir. 1990); *In re Lupron Marketing and Sales*

---

[5]      As part of this defense, Brooks doubtless would have raised the fact that the SEC's investigation of the Company recently resolved with no admission of guilt or financial penalty.  *See* Final Judgment as to Defendant Brooks Automation, Inc., entered May 28, 2008, in *Securities and Exchange Commission v. Brooks Automation, Inc.*, Case No. 08-CA-10834-WGY (D. Mass.).

760970.1

*Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005).

In determining whether preliminary approval of the Settlement is warranted, the sole issue before the Court is whether the settlement is *within the range* of what could be found to be fair, adequate and reasonable, so that notice may be given to the proposed class and a hearing for final approval can be scheduled. *See Rand*, 1993 WL 410874, at *3 ("In the event the settlement falls within the range of possible approval, this court may then authorize notice to the class and set a formal fairness hearing.").  "[W]hen the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected," a presumption of fairness attaches to the court's preliminary approval determination. *In re Lupron Marketing and Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (granting preliminary approval to proposed settlement) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

All the indicia cited above are present here.  First, the Settlement was reached during extensive arm's-length negotiations, including a formal mediation presided over by a former federal judge.  *See Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("strong initial presumption" of a settlement's fairness where "settlement negotiations[…]were conducted at arms' length"); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (where negotiations were facilitated by former federal judge, settlement was "clearly the result of arm's-length bargaining").  Second, Lead Counsel possessed adequate information concerning the strengths and weaknesses of the Action after extensive document discovery, full briefing of Defendants' motion to dismiss, and the exchange of information during and after a two-day mediation, including information concerning damages calculations.  Third, Lieff Cabraser is highly competent counsel, with many years of experience litigating complex securities cases.  Fourth,

Plaintiffs, who are sophisticated institutional clients and who have had a high level of involvement in the litigation, support presenting this Settlement to the Court for preliminary approval. Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the litigation also militates in favor of consummating the settlement process. Therefore, Lead Counsel respectfully submits that all of the above cited circumstances support preliminary approval of the proposed Settlement.

### B.    The Proposed Class Meets the Prerequisites for Class Certification under Rule 23(a).

One of the Court's functions in reviewing a proposed class action settlement is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Securities fraud cases are particularly amenable to class treatment. Indeed, "[c]ourts have expressed a general preference for class certification in securities fraud cases based on a policy favoring enforcement of the federal securities laws and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights." *Priest v. Zayre Corp.,* 118 F.R.D. 552, 553-54 (D. Mass. 1988) (Zobel, J.) (citations omitted).[6] Accordingly, Rule 23 has been liberally construed in order to enforce investor's rights and, in considering a motion for class certification, all doubts should be resolved in favor of certification. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).

Courts have routinely acknowledged the propriety of certifying a class solely for settlement purposes, particularly in the area of securities class action litigation. *See Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989) ("There is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that [Rule 23] has been liberally construed to effectuate that end."); *In re First*

---

[6]    *See also Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311 (D. Mass. 1987) ("In securities fraud cases, the class action device has been deemed especially appropriate, and even 'indispensable' to protect the small claimants who would otherwise as a practical matter be denied relief.") (citation omitted).

*Commodity Corp. of Boston Customer Accounts Litigation*, 119 F.R.D. 301, 308 (D. Mass. 1987)

(noting that "[t]emporary settlement classes have proved to be quite useful in resolving major class

action disputes").

A plaintiff seeking to certify a class must show that all four of the requirements of Rule 23(a)

are satisfied — typically called numerosity, commonality, typicality, and adequacy:

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs submit that the proposed Class satisfies each of Rule 23(a)'s requirements.  The

Class is defined in the Stipulation as "all persons and entities who purchased or otherwise acquired

Brooks' common stock between July 25, 2001, through and including August 1, 2006, including

without limitation any and all persons and entities who purchased, received or otherwise acquired

Brooks' common stock in connection with or traceable to the merger between Brooks and Helix

Technology Corporation on or about October 26, 2005, and who claim to have been damaged

thereby, as asserted in the Consolidated Complaint, with the exception of all Defendants, current or

former Brooks directors or officers, and their successors and assigns."

### 1.    Numerosity

Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all class

members is impracticable.  "To meet this requirement, the class representatives need only show that

it is difficult or inconvenient to join all the members of the class."  *Duhaime v. John Hancock Mut.*

*Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997).  In demonstrating that a proposed class meets the

numerosity requirement, a plaintiff is not required to show the exact number of class members at the

time of class certification.  *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258-59 (D. Mass.

2005) (finding numerosity based on "the reasonable inference that the putative class comprises

hundreds, if not thousands, of geographically diverse members.").  Instead, "numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large."  *Grace*, 128 F.R.D. at 167; *see also McCuin v. Sec'y of Health & Human Serv.*, 817 F.2d 161, 167 (1st Cir. 1987) ("[C]ourts may draw reasonable inferences from the facts presented to find the requisite numerosity.").

As of February 9, 2006, there were approximately 75 million shares of the Company's common stock outstanding.  Thus, Plaintiffs reasonably estimate that there are thousands of geographically dispersed members of the Class.  The size of the Class thus makes joinder of all members impracticable.[7]  Thus, this case satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).  *See, e.g., Randle v. SpecTran*, 129 F.R.D. 386, 390 (D. Mass. 1988) (certifying a class where more than 4.5 million shares of common stock were outstanding and actively traded); *Priest*, 118 F.R.D. at 554 ("Although the exact number of class members has not been determined, plaintiff's undisputed estimate that shareholders of record of [the Company's] common stock numbered more than 9,000 during the class period permits the inference that the class is so large that joinder is impracticable."); *Kirby*, 116 F.R.D. at 306 ("[A]n assumption that the class members are not so numerous as to make joinder impracticable would be, in light of the number of shares traded during the class period, ridiculous.") (internal quotation marks omitted).

Thus, the numerosity requirement of Rule 23(a)(1) has been satisfied.

## 2.    **Commonality**

Rule 23(a)(2) requires that there be common questions of law or fact among the proposed Class, not "that every question be common."  *Kirby*, 116 F.R.D. at 306.  In fact, "one common issue

---

[7]    "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (quoting *Adver. Specialty Nat'l. Ass'n. v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).

of fact or law at the core of the action" is sufficient to satisfy Rule 23(a)(2). *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).

Common questions of law and fact abound where, as here, a common course of unlawful conduct is alleged, and the alleged acts involve uniform written documents that are disseminated to the investing public. Here, the common questions include (a) whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein; (b) whether Defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC; (c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (d) whether the Backdating Defendants knew or deliberately disregarded that their statements were false and misleading; (e) whether the prices of Brooks' publicly traded securities were artificially inflated; (f) whether the Backdating Defendants engaged in and participated directly or indirectly in the common course of conduct complained of herein; and (g) whether the members of the Class have sustained damages and the proper measure of such damages.

These central issues, which are common to all Class members' claims, satisfy the requirement that there be common questions of fact or law. Indeed, in certifying a shareholder class action in *Priest*, this Court found that a similar listing of common questions established commonality under Rule 23(a)(2).[8] *See also In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 39 (D. Mass. 1998) (identifying common issues of fact and law where allegations were of a common course of fraudulent conduct by high-level decision makers); *Randle*, 129 F.R.D. at 390 ("Plaintiffs present common questions in their allegations of misstatements and omissions in various … public financial documents."); *Grace*, 128 F.R.D. at 167 ("[A]ll plaintiffs will have to

---

[8]    *See Priest*, 118 F.R.D. at 554 (holding that common questions of law and fact existed in that case "regarding: (1) Whether statements made by defendants contained misrepresentations or omissions; (2) Whether the alleged misrepresentations or omissions were material; (3) Whether defendants acted with scienter; and (4) Whether the misrepresentations or omissions inflated the market price of [the defendant company's] common stock.")

prove the same misrepresentations and omissions … .  Thus, it is obvious that common questions exist.").

Hence, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.    Typicality

The typicality requirement of Rule 23(a)(3) is met "'when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims,' and 'when the plaintiff's claims and those of the class are based on the same legal theory.'" *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (quoting *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)); *see also Kirby*, 116 F.R.D. at 312 ("[W]here plaintiff claims a continuing course of conduct and points to specific and identified documents which are alleged to contain interrelated and cumulative misrepresentations, class certification is proper.") (internal quotation marks omitted).  "[T]he burden on plaintiffs in proving typicality is not very substantial." *Abelson v. Strong*, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) (internal quotation marks omitted).  As this Court explained in *Priest*, in order to meet the typicality requirement of Rule 23(a)(3):

> [P]laintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members.  The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs.

*Priest*, 118 F.R.D. at 555 (internal citations and quotation marks omitted).

The typicality requirement is satisfied here.  Plaintiffs' claims arise from the same events and practices and are based on the same legal theories as the claims of absent Class members.  Plaintiffs allege that Defendants violated the federal securities laws by publicly disseminating a series of false and misleading statements, that they purchased or otherwise acquired Brooks stock at prices inflated by Defendants' misrepresentations in reliance on the market, and that they were damaged thereby in violation of Sections 10(b) and 20(a) Exchange Act and (with respect to the Helix Merger) Sections

-14-

11, 12 and 15 of the Securities Act.  In sum, Plaintiffs are purchasers or acquirers of Brooks

common stock that seek to prove Defendants' liability on theories that are identical to those

available to other Class members and based upon an identical set of facts as set forth in the SAC and

summarized above.  Plaintiffs have no unique claims or defenses that threaten to be the focus of the

litigation.  Accordingly, Plaintiffs' claims are typical of the Class.

### 4.    Adequacy

Fed. R. Civ. P. 23(a) also requires that the representative plaintiff adequately protect the

interests of the Class.  In *Guckenberger*, the court summarized the adequacy test of Rule 23(a)(4) as

follows:

> In making the required determination regarding the adequacy of the named plaintiffs
> as class representatives, a court must decide "first, whether any potential conflicts
> exist between the named plaintiffs and the prospective class members, and, second,
> whether the named plaintiffs and their counsel will prosecute their case vigorously."

957 F. Supp. at 326 (quoting *In re Bank of Boston*, 762 F. Supp at 1534).  Each of these elements is

satisfied here.

As demonstrated above, Plaintiffs' interests are not antagonistic or in conflict with the

interests of the Class they seek to represent.  Indeed, Plaintiffs are victims of the same wrongful

conduct as the other Class members.  They are also public institutions that are committed to the

vigorous prosecution of this action, and have retained counsel who are experienced in federal

securities litigation and have the ability and willingness to protect the interests of the Class.  *See*

*Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (approving of lead counsel because

lead counsel was "familiar with and experienced in this type of litigation").

Lead Counsel Lieff Cabraser is highly experienced in complex securities class actions and

has successfully prosecuted numerous securities class actions suits throughout the country.[9]

---

[9]    Plaintiffs refer the Court to LCHB's firm resume, filed in this matter as Exhibit B to the Declaration of Michael
W. Sobol in Support of Los Angeles County Employees Retirement Association's Motion for Consolidation of Actions,
*Footnote continued on next page*

760970.1

Accordingly, Plaintiffs will fairly and adequately protect the interests of the Class.

C.    **The Proposed Class Satisfies the Requirements of Rule 23(b) – Common Questions of Law Predominate and A Class Action is Superior to Multiple Individual Actions**

Finally, in addition to the four requirements of Rule 23(a), a proposed class must meet the requirements enumerated in one of the three subsections of Rule 23(b).  *Payne*, 216 F.R.D. at 24-25; *Kirby*, 116 F.R.D. at 305.  Here, the relevant subsection, Rule 23(b)(3), requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Here, little question exists that a class action is superior to other available methods, as required by Rule 23(b)(3).  To ensure that the class action is more efficient than individual actions, Rule 23(b) requires common issues to predominate over issues that are particular to a class representative.  Generally, common questions will predominate if the common issues constitutes a significant part of each of the class members' individual cases.  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003)) (common questions regarding liability are generally found to predominate even if individual damages issues exist).  Further, in cases alleging securities fraud, predominance is readily satisfied.  *See, e.g., Amchem Prods.*, 521 U.S. at 625 (finding common questions predominated in securities class action certified for settlement).

The test for predominance is clearly met in this Action, and a class action is superior to other available methods.  Here, the same set of operative facts and a single proximate cause applies to each Class Member – each Class Member purchased or otherwise acquired Brooks common stock during the proposed class period at prices that were alleged to be artificially inflated as a result of Defendants' conduct, and was alleged to have been harmed when the facts came to light.  If

---

*Footnote continued from previous page*
for Appointment of Lead Plaintiff and Approval of Lead and Class Counsel ("Sobol Decl.") on August 18, 2006. [Docket No. 21-4.]

Plaintiffs and each Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See Kirby*, 116 F.R.D. at 311 ("In securities fraud cases, the class action device has been deemed especially appropriate, and even 'indispensable' to protect the small claimants who would otherwise as a practical matter be denied relief.").

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied. Thus, there are no issues which would prevent the Court from certifying this Class for settlement purposes and appointing Plaintiffs as Class Representatives.

**D.    The Proposed Form and Method of Class Notice are Appropriate and Satisfy the Requirements of Rule 23.**

The Court should approve the form and content of the proposed Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses and Settlement Fairness Hearing (the "Notice") and the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing ("Summary Notice"). *See* Settlement, Exs. A-1, A-3. Each document is written in plain and straightforward language. The Notice features a "Q & A" format that clearly sets out the relevant information and answers most of the questions that Class members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Class members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class counsel may enter an appearance through counsel if desired, that the Court will exclude from the Class any Class member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class members under Rule 23(c)(3)(B).

The Notice also satisfies the separate disclosure requirements under the Private Securities Litigation Reform Act ("PSLRA"). To conform with the PSLRA, the notice must state: (i) the amount of the Settlement proposed to be distributed to the parties as determined in the aggregate and

on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiffs prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs, the amount that will be sought, and a brief explanation in support of the request; (iv) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice; (v) a brief statement explaining why the parties are proposing the settlement; and (vi) such other information as may be required by the Court. *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F). The Notice satisfies the foregoing criteria.

The Notice additionally discloses the date, time and location of the Settlement Fairness Hearing and the procedures and deadlines for the submission of Proof of Claim forms and objections to any aspect of the Settlement, Plan of Allocation[10], or attorneys' fees and expenses to be sought by Lead Counsel. These disclosures are complete and should be approved by the Court. *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1) (requiring court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement). Further, notice must be "reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Bank & Trust Co.*, 339 U.S. 306, 314

---

[10]    The Plan of Allocation is set forth on pages 17-20 of the Notice, and allocates the settlement money based on Plaintiffs' estimate of the amounts by which the market prices of Brooks common stock were artificially inflated at various points during the Class Period, and takes into consideration when an authorized claimant purchased Brooks shares and, if the claimant sold the shares, when they were sold. The Plan of Allocation also takes into consideration the operation of the statutory "90 day bounce-back" limitation on damages in the PSLRA. Plaintiffs submit that the Plan of Allocation is fair and reasonable and should be approved together with the Settlement at the Settlement Fairness Hearing.

(1950); *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002) (finding that notice was adequate where it set forth the settlement terms, nature of the action, class member criteria, recovery sought, hearing date, and how class members could request exclusion).

Plaintiffs' proposed plan of notice satisfies the above criteria. As detailed in the proposed Preliminary Approval Order (*see* Settlement, Exh. A), Lead Counsel and the claims administrator propose to mail copies of the Notice and Proof of Claim and Release form ("Proof of Claim") (*see* Settlement, Exh. A-2) by first class mail, postage prepaid, to all Class members who can be identified through reasonable effort. This will be accomplished principally by using record holder data to be produced by Brooks' transfer agent, and by reaching out to all registered broker-dealers for the last known names and addresses of potential Class members. In addition, Lead Counsel shall publish the Summary Notice once in the *Investor's Business Daily*, as well as in a wire to be posted for up to thirty days on the *Business Wire*, a major national business-oriented wire service.

Plaintiffs' proposed notice program fulfills the requirements of due process and Rule 23, and should be approved by the Court. *See In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D. N.H. 2006) (approving notice program that distributed notice packets to individual investors and nominees and published summary notice in national newspaper and wire services); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210-11 (S.D.N.Y. 1995) (sending notice by first class mail is the "best notice practicable," and publication in a major newspaper "will have the broadest reach to inform those members of the Class who, for some reason, may not received the mailed Notice."); *cf. New England Health Care Employees Pension Fund v. Fruit of the Loom Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (granting final approval of settlement where notice had been mailed to class members and summary notice was published in the *Investor's Business Daily*).

## V.    **PROPOSED SCHEDULE**

If the Court is inclined to grant preliminary approval to the proposed Settlement, the Parties respectfully submit the following procedural schedule for the Court's review. The proposed

Preliminary Approval Order includes one blank date – the date of the Settlement Fairness Hearing. The deadlines for the submission of requests for exclusion and objections and the deadline for the submission of Proofs of Claim must be extrapolated from the Settlement Fairness Hearing date in order to properly effectuate the notice process. In this regard, the Parties have consented to present the following generalized schedule of events to the Court:

| Event | Time for Compliance |
|---|---|
| Deadline for Mailing of the Notice and a Proof of Claim to Class Members (the "Notice Date") | 75 calendar days prior to the Settlement Fairness Hearing, to be set by the Court (Proposed Preliminary Approval Order, ¶11) |
| Publishing Summary Notice in the *Investor's Business Daily* and the *Business Wire* | Within 10 calendar days of the Notice Date (Proposed Preliminary Approval Order, ¶12) |
| Deadline for Filing Proofs of Claim | 60 calendar days after the Notice Date (Proposed Preliminary Approval Order, ¶14(a)) |
| Deadline for Filing Exclusion Requests or Objections | 21 calendar days prior to the Settlement Fairness Hearing (Proposed Preliminary Approval Order, ¶¶15, 17) |
| Settlement Fairness Hearing | Scheduled for _____, 2008 at _____ _.m. (Proposed Preliminary Approval Order, ¶6) |

Further, the Parties respectfully request that the Settlement Fairness Hearing be scheduled for approximately ninety (90) days after the entry of the proposed Preliminary Approval Order, or later at the Court's convenience. If this schedule is not convenient for the Court, the Parties request that the Court use at least the same or greater intervals between each event listed in the schedule in order to provide all parties sufficient time to comply with the proposed Preliminary Approval Order.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement, Conditional Certification of Class, Approval of Notice Plan, and Setting of Settlement Fairness Hearing.

760970.1

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

/s/ Daniel P. Chiplock
Daniel P. Chiplock (*admitted pro hac vice*)

Steven E. Fineman
Daniel P. Chiplock
780 Third Avenue, 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Richard M. Heimann
Michael W. Sobol (BBO # 555519)
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Counsel for Lead Plaintiff Los Angeles County
Employees Retirement Assocation and named
plaintiff Sacramento County Employees'
Retirement System*

## **CERTIFICATE OF SERVICE**

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be delivered via first class mail to those indicated as non-registered participants on the NEF on June 24, 2008.

/s/ Daniel P. Chiplock

Daniel P. Chiplock (*admitted pro hac vice*)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

-22-